**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

ISRAEL ARDILLA,

        Petitioner,

vs.                                        Case No. 3:07-cv-295-J-32MCR
                                                               3:04-cr-121-J-32MCR

UNITED STATES OF AMERICA,

        Respondent.

_____

## ORDER

This case is before the Court on Petitioner Israel Ardilla's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody. (Doc. 1.) On June 18, 2007, the government filed a Response. (Doc. 6.) On January 7, 2009, the Court held an evidentiary hearing on petitioner's claims, the transcript of which is incorporated by reference. (Doc. 14.) After the hearing, the Court ordered supplemental briefing from the government and petitioner, which has been filed. (Docs. 15, 17, 18.)

**I. Background**

"In April 2004, a grand jury indicted [Israel] Ardilla, [Moises] Ardilla Tepetate, Samuel Ardilla, Jesus Campos-Reyes, and Hilarion Garcia-Arzate for conspiring to distribute methamphetamine and multiple other drug offenses. Campos-Reyes and Garcia-Arzate pleaded guilty. In January 2005, the Ardilla brothers proceeded to trial." See United States v. Ardilla-Tepetate, No. 05-12614, 2006 WL 952324, *2-3

(11th Cir. Apr. 13, 2006).

Petitioner was found guilty on January 28, 2005 of: (1) conspiracy to distribute methamphetamine; and (2) possession with intent to distribute methamphetamine. (Crim. Doc. 145.)[1]  Further, the jury returned a special verdict finding Petitioner responsible for distributing "50 grams or more (actual or pure), or 500 grams or more of a mixture containing a detectable amount of methamphetamine" in relation to both counts. (Id.)  While Petitioner's brother, Moises Ardilla, was found guilty of similar charges, Petitioner's other brother, Samuel Ardilla, was found not guilty of all charges. (Crim. Docs. 146, 147.)  On April 28, 2005, Petitioner was sentenced to 120 months imprisonment, the mandatory minimum, (Crim. Doc. 177), and judgment entered May 5, 2005. (Crim. Doc. 183.)  The Eleventh Circuit affirmed both the conviction and the sentence. (Crim. Doc. 251.)

Petitioner filed this § 2255 action claiming that his trial counsel was constitutionally ineffective for failing to raise safety-valve at sentencing.[2] (Doc. 1.)

---

[1] Citations to Ardilla's criminal case file, 3:04-cr-121-J-32MCR, are denoted as "Crim. Doc. ___." Citations to Ardilla's civil § 2255 case file, 3:07-cv-295-J-32MCR, are denoted as "Doc. ___."

[2] Petitioner tried to raise this claim on direct appeal but the Eleventh Circuit declined to reach it:

> Alternatively, Ardilla argues that the record is sufficiently developed for a finding that his counsel was ineffective for failure to raise expressly the safety-valve provision.  We will not consider ineffective assistance of counsel claims on direct appeal unless there is sufficient evidence on the record.  Because Ardilla did not raise the issue of the safety-valve in the

2

## II. The Evidentiary Hearing

At the hearing, Petitioner presented two witnesses as evidence in support of his motion. Petitioner's trial counsel, now the Honorable John Merritt, testified as to why he did not raise safety-valve at sentencing. He testified that he is not an expert in federal procedural matters and that his representation of Israel Ardilla at trial and sentencing was his first and only occasion to represent a defendant in a federal criminal case. (Doc. 20 at 10-11.) Counsel testified that he knew safety-valve existed but did not understand its applicability, believing, after consultation with other attorneys, that it would not apply to a drug case. (Id. at 10.)[3] Counsel testified that he believed that Israel Ardilla was completely truthful with both counsel and the government throughout the proceedings. (Id. at 19-20.)

As he did at trial, Israel Ardilla testified on his own behalf at the hearing. He stated that his lawyer at trial did not advise him of safety-valve. (Id. at 35-36.) He testified that, had he known about safety-valve at the time of sentencing, he would have instructed his lawyer to raise the issue. (Id. at 36.) Further, Israel Ardilla asserted that he provided the government with all the information about his

---

> district court, the record is not sufficiently clear to determine how the Court would have ruled, and it is likewise unclear whether counsel was ineffective or any alleged ineffectiveness caused Ardilla harm. We do not address this argument.

Ardilla-Tepetate, 2006 WL 952324, *4 (citation omitted).

[3]  In fact, safety-valve only applies in drug cases.

3

involvement in the drug transaction before his sentencing. (Id. at 37.)

The government also presented a witness at the hearing, the FBI case agent, Joseph Aguilar. Agent Aguilar testified that he believed Israel Ardilla was not truthful during his pretrial proffer to the government on two specific issues.[4] First, Agent Aguilar continues to believe that Samuel Ardilla was involved in the drug transaction despite his acquittal. (Id. at 60-61.) Second, Agent Aguilar believes that Israel Ardilla was inconsistent when he told the Court at trial that he received a "sample" of methamphetamine from Campos-Reyes yet told the government at the proffer that the first time he received drugs from Campos-Reyes was for the subject drug transaction. (Id. at 57-58.)

### III. Legal Standard

An allegation of ineffective assistance of counsel must normally be raised by collateral attack. Mills v. United States, 36 F.3d 1052, 1055 (11th Cir. 1994). To establish an ineffective assistance of counsel claim a defendant must demonstrate: (1) "that counsel's representation fell below an objective standard of reasonableness," Strickland v. Washington, 466 U.S. 668, 688 (1984); and (2) that the defendant was prejudiced by the deficiencies in counsel's performance. Id. at 691-92. Judicial

---

[4] This case was unusual because the defendant made a proffer to the government concerning his involvement in the charged crime, but then he and the government were unable to reach a plea agreement so he went to trial and was convicted. Perhaps this is why nobody (including the undersigned) thought about safety-valve at the time of sentencing.

4

scrutiny of counsel's performance must be highly deferential. Id. at 689. The proper assessment of attorney performance "requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Id. However, a court need not address the adequacy of counsel's performance where the defendant has failed to show sufficient prejudice. Strickland, 466 U.S. at 697; Brown v. Head, 272 F.3d 1308, 1313 (11th Cir. 2001). To satisfy the prejudice prong, the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Strickland, 466 U.S. at 694.

## IV. Discussion

### a. Performance of trial counsel

The first prong of Strickland requires that trial counsel's performance fell below an objective standard of reasonableness. Here, the government concedes that the performance of petitioner's trial counsel was subjectively deficient. At the evidentiary hearing, petitioner's trial counsel conceded that he did not raise the safety-valve issue because, amongst other reasons, he did not realize that safety-valve applied to drug offenses.

Nevertheless, the government contends that counsel's performance was not objectively unreasonable because even if counsel had known about the safety-valve

5

and raised it at sentencing, it would not have applied to petitioner. As stated by the government at the hearing, this argument effectively folds the performance prong into the prejudice prong of Strickland. Accordingly, the Court will turn to the issue of whether safety-valve was applicable in these circumstances (thereby making it objectively unreasonable not to raise it) and, whether, if safety-valve had been raised at sentencing, there is a reasonable probability that petitioner would have received a lower sentence.

### b. Prejudice to petitioner

The safety-valve directs the Court to impose a sentence pursuant to the Guidelines "without regarding to any statutory minimum sentence," if, "after the [g]overnment has been afforded the opportunity to make a recommendation," the court finds that the defendant meets five criteria. See 18 U.S.C. § 3553(f); U.S.S.G. 5C1.2. Those criteria are that: (1) the defendant has no more than one criminal history point; (2) no violence was used in the offense, and the defendant did not possess a firearm "or induce another participant to do so" in connection with the offense; (3) "the offense did not result in death or serious bodily injury to any person;" (4) "the defendant was not an organizer, leader, manager, or supervisor of others in the offense . . . and was not engaged in a continuing criminal enterprise;" and (5) "the defendant has truthfully provided to the [g]overnment all information and evidence [he] has concerning the offense or offenses that were part of the same course of conduct

6

or of a common scheme or plan." Id.

"The burden is on the defendant to show that he has met all of the safety valve factors." United States v. Johnson, 375 F.3d 1300, 1302 (11th Cir. 2004). As acknowledged by the Eleventh Circuit on direct appeal, "Ardilla meets the first and third requirements because he had only one criminal history point and no death or serious bodily injury occurred . . . ." See Ardilla-Tepetate, 2006 WL 952324, *4. Additionally, at the hearing the government conceded that Ardilla meets the second requirement. (Doc. 20 at 88.) Accordingly, the Court will turn to the disputed fourth and fifth safety-valve factors.

**i. Petitioner's role in the offense**

Safety-valve relief is only applicable if Ardilla "was not an organizer, leader, manager, or supervisor of others in the offense, as determined under the sentencing guidelines and was not engaged in a continuing criminal enterprise, as defined in 21 U.S.C. § 848." 18 U.S.C. 3553(f); U.S.S.G. § 5C1.2. These terms are further defined in Application Note Five to the above-referenced guideline. That note says, "'Organizer, leader, manager, or supervisor of others in the offense, as determined under the sentencing guidelines,' . . . means a defendant who receives an adjustment for an aggravating role under § 3B1.1 (Aggravating Role)." U.S.S.G. § 5C1.2 n. 5. Ardilla facially qualifies for safety-valve under this element because it is undisputed that he did not receive an aggravating role enhancement pursuant to § 3B1.1 at

7

sentencing.

Nevertheless, the government argues that Ardilla's role in the offense was not litigated at sentencing and if Ardilla had asserted that safety-valve was applicable the government would have sought a role enhancement pursuant to § 3B1.1. However, the PSR prepared by the probation officer did not recommend any role enhancement based on the offense conduct and, despite arguing for a sentence far exceeding the minimum mandatory, the government did not object to that position. The lowest such enhancement is 3B1.1(c). "[A] two-level increase in a defendant's base offense level under section 3B1.1(c) is proper only if a defendant was the organizer or leader of at least one other participant in the crime, asserting control or influence over at least that one participant." United States v. Glover, 179 F.3d 1300, 1302 (11th Cir. 1999). At the sentencing hearing the Court made findings as to the organization of the conspiracy:

> But, again, it was not – there was no demonstrated – no effort by the government to demonstrate a pattern of activity or whether this involved some organized operation or anything like that.
>
> And, indeed, much of the evidence would have led me to the contrary conclusion, that Mr. Ardilla and – both Ardilla defendants, the evidence did not indicate to me were very sophisticated about what they were doing.
>
> And as I recall the evidence, Mr. Bustos was instrumental, I'll use that word, in trying to structure this relationship in this transaction.

Crim. Doc. 194 at 90.

8

It does not appear that Israel Ardilla would have been scored with a role enhancement. While the government is free to argue for such an enhancement when petitioner is resentenced (and accordingly the Court will not conclusively determine the issue), on the current record petitioner has established that he likely meets the fourth safety valve criteria.

**ii.     Whether Petitioner provided all information to the government**

Under the final safety-valve criteria, Ardilla must establish that he "has truthfully provided to the [g]overnment all information and evidence [he] has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan . . . ." 18 U.S.C. 3553(f); U.S.S.G. § 5C1.2. "This final factor is a 'tell-all' provision: to meet its requirements, the defendant has an affirmative responsibility to 'truthfully disclose to the government all information and evidence that he has about the offense and all relevant conduct.'" Johnson, 375 F.3d at 1302.

Israel Ardilla made a proffer to the government before trial in which he admitted his involvement in the drug deal, outlined the scope of the transaction and explained the involvement of his co-defendants. However, that proffer did not lead to a guilty plea because the government was not willing to accept Israel Ardilla's assertion that his brother, Samuel Ardilla, was not involved in the transaction.

Despite the proffer, the government asserts that Israel Ardilla failed to provide the government with all the information regarding the offense prior to sentencing and

9

could not have met the fifth criteria for safety-valve. First, the government contends that Israel Ardilla did not truthfully provide information regarding Samuel Ardilla's involvement in the transaction. The government maintains its position that Samuel Ardilla was more involved in the drug deal than Israel Ardilla admitted. Indeed, Agent Aguilar testified at the evidentiary hearing that he did not believe then, and does not believe now, that Israel Ardilla was being truthful during the proffer regarding his assertion that Samuel Ardilla was not involved in the transaction. However, the government had the opportunity to prove Samuel Ardilla's involvement to the jury in the underlying criminal case. This evidence was not persuasive enough for the jury, which acquitted Samuel Ardilla of all charges. Moreover, the government has not identified additional information regarding Samuel Ardilla's involvement other than that adduced at trial. (Doc. 20 at 61-62.) While the Court understands that the burden of proof at sentencing is less than that required by the jury to convict, the Court would not find, based on the evidence, that Samuel Ardilla was involved.

Second, the government contends that Israel Ardilla did not truthfully provide information regarding who gave him the methamphetamine sample. The government asserts that Ardilla stated at his proffer that the charged transaction was the first time he received drugs from Campos-Reyes. The government asserts that Ardilla was referring to the 660 lbs of methamphetamine and not the sample. This belief was memorialized at the sentencing hearing:

> Mr. Morris: I should say [Campos-Reyes] was the supplier or the large amount of methamphetamine on the April 16th deal. It's important to note, however, Your Honor, that he was not, and Hilarion Garcia-Arzate was not, the supplier of the sample of methamphetamine that was provided several weeks earlier.
>
> The Court: Who was that?
>
> Mr. Morris: We're unaware of [who] that was. But it is clear from the proffers and all the other evidence that we've gathered that there was another supplier for that sample of methamphetamine that Israel Ardilla obtained and gave to his brother, Moises, who then gave to the cooperating source.

Crim. Doc. 194 at 55.

The government's position has little evidentiary support on the current record and the Court cannot reach the same conclusion. At the evidentiary hearing, Agent Aguilar testified that he did not ask Ardilla anything at the proffer about the sample as distinct from the full amount of drugs provide by Campos-Reyes. (Doc. 20 at 66.) However, at trial Israel Ardilla testified on cross-examination that Campos-Reyes provided him with the sample. (Crim. Doc. 242 at 126-127.) He reaffirmed that testimony at sentencing, (Doc. 194 at 63), and at the evidentiary hearing. (Doc. 20 at 39.) There is simply no credible evidence before the Court to suggest otherwise.

Accordingly, the Court finds that Ardilla would have satisfied the fifth criteria for safety-valve because he truthfully disclosed to the government all information he had about the offense and relevant conduct.

## V. "Reasonable Probability" of a Different Result

Thus, Ardilla was prejudiced by his counsel's failure to assert the safety-valve if there is a reasonable probability that the result of the proceeding would have been different. This question is not straightforward because, unlike the sentences of many defendants who qualify for safety-valve, the low end of Israel Ardilla's post- safety-valve guidelines sentence remain above the mandatory minimum sentence previously imposed in this case. While the applicability of safety-valve in these circumstances is an open question in the Eleventh Circuit, see United States v. Quirante, 486 F.3d 1273, 1276 (11th Cir. 2007), the government has conceded that this issue does not prevent the Court from applying safety-valve in this case. (Doc. 17). As to whether the Court would have given Ardilla a lower sentence if it had applied the safety-valve, both parties made reference to the transcript of the sentencing hearing, where the Court made comments that could support their respective positions. The Court has reviewed the sentencing transcript and refreshed its memory as to the particulars of this case. For the purposes of this motion, it is sufficient to say that there is a reasonable probability that, but for counsel's failure to request safety-valve relief, Israel Ardilla would have received a lower sentence.[5] Accordingly, it is hereby

**ORDERED:**

1. Petitioner Israel Ardilla's Motion to Vacate, Set Aside or Correct Sentence

---

[5] This is not intended to prejudge what sentence the Court will impose at the resentencing.

pursuant to 28 U.S.C. § 2255 (Doc. 1) is **GRANTED**.

2. The Clerk should enter judgment for Israel Ardilla and against the United States of America, and close this file.

3. Based on this ruling, Israel Ardilla is entitled to vacation of his criminal judgment (Crim. Doc. 183) and a new sentencing hearing. By separate Order in his criminal case, the Court will implement this relief.

**DONE AND ORDERED** at Jacksonville, Florida this 13th day of February, 2009.

*/s/ Timothy J. Corrigan*
TIMOTHY J. CORRIGAN
United States District Judge

jcd.
Copies:
counsel of record

13